**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:24-CV-00676-CHL**

JENNIFER S.,[1]                                                                                    **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,[2]                                               **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Jennifer S. ("Claimant"). Claimant

seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary

and/or supporting brief. (DNs 17, 18, 20.) Claimant also filed a reply. (DN 21.) The Parties

have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct

review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13.) Therefore,

this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.    BACKGROUND**

On May 30, 2022, Claimant applied for disability insurance benefits under Title II

("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 19, 37, 54-56, 72-74,

82, 184-88.) Her applications alleged disability beginning on April 20, 2021, due to her

diabetes; dystonia in neck, arms and shoulders; neuropathy in hands, feet, arms, and legs;

blindness in left eye; repetitive stress disorder/overuse syndrome; carpal tunnel; headaches; back

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] As Frank J. Bisignano is now the Commissioner of Social Security, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

problems; generalized anxiety disorder; and osteoarthritis in back, feet, hands, hips, and knees. (*Id.* at 19, 37, 56, 64, 74, 82, 201.)  Claimant's applications were denied initially and again on reconsideration.  (*Id.* at 95-102, 105-10.)

At Claimant's request, Administrative Law Judge ("ALJ") Jonathan T. Shoenholz ("the ALJ") conducted a hearing on Claimant's applications on July 7, 2023.  (*Id.* at 33-53, 111, 307-11.)  Claimant attended the hearing by telephone with her attorney.[3]  (*Id.* at 35.)  An impartial vocational expert also participated in the hearing.  (*Id.*)

During the hearing, Claimant testified to the following.  She obtained a GED.  (*Id.* at 38.)  Her past work was as a food and prep cook for a restaurant.  (*Id.*)  She stopped working due to her muscle pain and fibromyalgia; she had a lot of pain and was not able to stand for long periods of time.  (*Id.* at 38-40.)  Her fibromyalgia makes it difficult for her to wear clothing, especially in the heat.  (*Id.* at 40.)  She has pain in her feet and shin, which makes it difficult to wear shoes.  (*Id.* at 43.)  She uses a cane to help her walk but finds it difficult to stand or walk for more than ten minutes.  (*Id.* at 44-45.)  She doesn't have feeling in her ring and middle fingers on both hands, which did not improve after she had carpal tunnel surgery on one hand; she finds it difficult to hold things without dropping them.  (*Id.* at 43, 45.)  She has to elevate her legs consistently to avoid pain while sitting down even in bed and in her recliner.  (*Id.* at 46-47.)  She receives injections in the muscles in her neck about every other month and in her knees about every three months.  (*Id.* at 46.)  The injections relieve her pain to varying degrees but none last the entire interval between injections.  (*Id.*)

---

[3] The hearing was held telephonically due to the COVID-19 pandemic with Claimant's consent.  (*Id.* at 35-36, 149-50.)

The ALJ issued an unfavorable decision on November 13, 2023. (*Id.* at 16-32.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since April 20, 2021, her alleged onset date. (*Id.* at 21.) Second, Claimant had the following severe impairments: lumbar degenerative disc disease, lumbar radiculopathy, cervical degenerative disc disease, cervical dystonia, neuropathy, and obesity. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 23.) Fourth, Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> the claimant can lift and/or carry twenty pounds occasionally, and up to ten pounds frequently; can sit for six hours in an eight-hour workday; can stand and/or walk for six hours in an eight-hour workday; would require the option to alternate to sitting for five minutes after standing and/or walking continuously for 75 minutes; can make frequent use of push/pull hand and foot controls; can frequently reach, handle, finger, and feel; can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can never balance as described in the Selected Characteristics of Occupation (SCO); can stoop, kneel, crouch, and crawl occasionally; can never work at unprotected heights; can work around moving mechanical parts only occasionally; can never operate a motor vehicle as a work requirement; can work in vibration occasionally.

(*Id.*) Additionally at step four, the ALJ found that Claimant had no past relevant work. (*Id.* at 26.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) The ALJ concluded that Claimant was not under a disability from April 20, 2021, through November 13, 2023, the date of his decision. (*Id.* at 27.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on September 24, 2024. (*Id.* at 1-8, 182-83.) At that point, the ALJ's decision

became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on November 19, 2024.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities.  *See* 42 U.S.C. §§ 401-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2025).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial

evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.    Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[4] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[4] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant argued that the ALJ erred in two ways. First, she argued that the ALJ failed to evaluate or explain the persuasiveness of the opinions of Beth McCoy, APRN ("APRN McCoy"), as required by the applicable regulations.  (DN 17, at PageID # 672-76; DN 18; DN 21, at PageID # 696-98.)  Second, she argued that the ALJ's RFC finding should have addressed whether she would be off-task while alternating between standing and sitting such that the ALJ's RFC finding was impermissibly vague.  (DN 17, at PageID # 676-77; DN 18; DN 21, at PageID # 699-700.)  The Court will consider each of these arguments below.

### A.    APRN McCoy's Opinion

Claimant argued that the ALJ erred in his assessment of APRN McCoy's opinions.  (DN 17, at PageID # 672-76; DN 18; DN 21, at PageID # 696-98.)  The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence.  Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2025).    Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation:

---

[5] This language indicates that the new regulations have done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2025).

supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822-23 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does

7

not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions"), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021).

Claimant argued that the ALJ only evaluated one of the two medical opinions authored by APRN McCoy, and that the ALJ's evaluation was lacking. (DN 17, at PageID # 672-73.) APRN McCoy provided two opinions regarding Claimant's functioning on two different check box forms. (R. at 423-27, 589-94.) In the first, completed on June 27, 2022, APRN McCoy opined that Claimant was likely to be off task twenty-five percent of the work day; would be absent four or more days per month; could frequently lift and carry up to twenty pounds; was unable to sit, stand, or walk for even one hour in an eight hour work day; required the option to alternate sitting and standing at will; required a cane to ambulate effectively; could frequently perform fingering and feeling but only occasionally perform reaching (including overhead), handling, pushing, and pulling; could occasionally use foot controls; could rarely climb stairs and ramps; could never climb ladders and scaffolds; could occasionally rotate her head and neck; could rarely balance; could never stoop, kneel, crouch, or crawl; could occasionally operate a vehicle; could rarely be exposed to humidity and wetness; and could never be exposed to unprotected heights, moving mechanical parts, pulmonary irritants, extreme cold, extreme heat, and vibrations. (*Id.* at 423-26.) In a May 18, 2023, opinion, APRN McCoy offered some

8

changes to her prior opinion, though the majority of her conclusions overlapped with her prior assessment.  (*Id.* at 589-92; *compare id.* at 423-26, *with id.* at 589-92.)  She opined that Claimant was more restricted in terms of her ability to lift and carry, stating that Claimant could now only occasionally lift and carry up to ten pounds and rarely up to twenty pounds; her previous opinion had said Claimant could frequently lift and carry up to twenty pounds.  (*Id.* at 424, 590.)  She imposed both greater and lesser limitations on Claimant's use of her hands.  She marked that Claimant could frequently perform handling, pushing, and pulling and occasionally perform feeling with her left hand and arm and frequently perform handling and occasionally perform feeling, pushing, and pulling with her right hand and arm.  (*Id.* at 591.)  She limited Claimant to never balancing whereas her prior opinion limited Claimant to rarely balancing.  (*Id.* at 426, 591.)  She opined for the first time that Claimant would be able to maintain attention and concentration for less than thirty minutes at a time before requiring a break, required the option to lie down or recline more than four times per day for two hours at a time, and should elevate her legs when sitting.  (*Id.* at 589, 591.)

In his opinion, the ALJ cited only APRN McCoy's May 18, 2023, opinion, noting that APRN McCoy "opined that the claimant's severe conditions and associated symptoms result[ed] in limitations with sitting, standing, walking and lifting that would preclude her from performing even sedentary work on a full-time basis."  (*Id.* at 24 (citing *id.* at 590).)  The ALJ found that APRN McCoy's opinion was "not supported."  (*Id.* at 25.)  The ALJ noted that APRN McCoy's opinion "provided no analysis linking objective findings to limitations, and her own treatment records of the claimant generally included normal physical examinations, which does not support

the extensive limitations she found."[6]  (*Id.*)  The ALJ found APRN McCoy's opinion was not consistent with the overall record, summarizing that while Claimant has reported "symptoms including back pain, lower extremity pain, knee pain, hip pain, neck pain, upper extremity pain, joint stiffness, muscle weakness, extremity numbness, headaches, and fatigue," "the objective clinical signs [and] findings contained in treatment records, and the conservative treatment record [were] more consistent with the functional assessments found by the State Agency consultants and by Nurse Practitioner Johnson."  (*Id.* (citing *id.* at 327, 386, 430, 435, 557-58, 570-71).)  The ALJ then cited examples of those objective findings and the results of diagnostic imaging in support of his conclusion, noting findings of "only mild to no deficits in range of motion; only mild tenderness; unsteady, but functional gait; mildly diminished sensation; and only mild or nonexistent weakness" in physical and psychological examinations and findings of "only mild to moderate degenerative changes" in diagnostic studies.  (*Id.*at 25 (citing *id.* at 321, 327, 345, 358, 395, 405, 410, 429, 433, 435, 494, 498, 557, 570).)  The ALJ also emphasized Claimant's conservative treatment method and that Claimant received trigger point injections "a little less than once per month" that "resolved her pain symptoms."  (*Id.* at 25 (citing *id.* at 323, 331, 333, 337, 339, 342, 348, 350, 352).)  He concluded that "[w]ith these trigger points typically

---

[6] Claimant disputed the ALJ's characterization of APRN McCoy's treatment records.  (DN 17, at PageID # 674.) She argued that the ALJ's analysis "lack[ed] true evidentiary support" and was "devoid of citations to the actual record" in violation of the rule that an ALJ should "identify and discuss substantial evidence to support their determination."  (DN 17, at PageID # 674 (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 242-43 (6th Cir. 2007)).) Claimant argued that "[i]t is not the job of this court to have to comb back through the record to substantiate the ALJ's conclusions."  (*Id.* at 674-75.)  And while the Court agrees to an extent, the Court here finds this to be a deficiency in the Claimant's argument, not the ALJs.  Neither *Rogers*, nor any other authority cited by Claimant requires an ALJ to provide *citations to the record* as opposed to discussing *evidence in the record*.  The ALJ here cited evidence: he summarized APRN McCoy's treatment records as containing normal physical examinations.  And while he did not point to particular pages in the record, neither did Claimant point to pages in the record to show that his generalization was incorrect.  Absent authority requiring more from the ALJ or a dispute about the accuracy of the ALJ's generalization "support[ing] assertions of fact by citations to particular parts of the record" as required by both this Court's Order (DN 14, at ¶ 4) and the Rule 5 of the Rules Governing Social Security Actions, the Court sees no need to address Claimant's argument any further.

10

resolving her pain, and being required no more than once a month, the work impact that her pain would have is not consistent with" APRN McCoy's opinion.  (*Id.* at 25.)

Claimant argued that the ALJ erred by not discussing both of APRN McCoy's opinions and that the ALJ's opinion did not allow the Court to assess whether that earlier opinion was discounted or overlooked.  (DN 17, at PageID # 673; DN 21, at PageID # 696-97.)  But Claimant ignores that 20 C.F.R. §§ 404.1520c, 416.920c expressly permit the approach adopted by the ALJ here.  The regulations provide that an ALJ will provide a source-level articulation regarding medical opinions.  20 C.F.R. §§ 404.1520c(a), 416.920c(a) state that "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, we will consider *those medical opinions* or prior administrative medical findings from that medical source *together* using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."  20 C.F.R. §§ 404.1520c(a), 416.920c(a) (emphasis added).  The regulations subsequently explain

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).  Thus, the ALJ was not required to discuss APRN McCoy's opinions individually.  *See Riney v. Comm'r of Soc. Sec.*, No. 5:23-CV-1776, 2024 WL 898561, at *12 (N.D. Ohio Feb. 15, 2024) (collecting cases), *report and recommendation adopted*, No. 5:23CV1776, 2024 WL 895157, at *1 (N.D. Ohio Mar. 1, 2024).  While Claimant

emphasized that the ALJ did not cite to the earlier opinion in his analysis, Claimant did not offer an extensive comparison of the two opinions or identify any particular limitation present in the earlier opinion that the ALJ failed to consider. Given the overlap between the two opinions set forth above, the Court finds the latter fatal to Claimant's argument. Claimant has failed to supply any authority to support that the mere fact that the ALJ did not expressly cite to APRN McCoy's earlier opinion in Exhibit 4F constitutes reversible error.

Claimant's remaining challenges to the ALJ's assessment of APRN McCoy's opinions are more properly styled as challenges to the ALJ's assessment of the Claimant's overall RFC. Claimant argued that her injections did not fully resolve her pain and that "[a]s the injection wears off, her pain will naturally increase and lead to greater limitations, as opined to by APRN McCoy." (DN 17, at PageID # 675.) She emphasized that while the ALJ relied on the consultative examiner's opinion regarding Claimant's cane use, the ALJ did not consider that the day before the consultative examination, Claimant's pain management provider noted diminished strength and an unsteady gait. (*Id.* (citing R. at 429).) She also emphasized that "[g]iven the [Claimant]'s conditions, it is possible that her pain levels vary from day to day and that is why the findings of the consultative examiner were different from the day before." (DN 17, at PageID # 676.) But these arguments amount to nothing more than Claimant's attempts to point to substantial evidence in the record to support a conclusion opposite to that reached by the ALJ. As set forth above, the ALJ cited a number of specific records in support of his assessment of APRN McCoy's opinion. He also relied on the opinions of the state agency medical consultants and the consultative examiner. Read as a whole, the items cited constitute substantial evidence to support the ALJ's conclusions, and his analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019)

12

(citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").  Claimant did nothing more than point to other evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ.  However, this Court's role is not to second-guess the ALJ's conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).  The Court thus finds the ALJ's RFC and his analysis of the opinion of APRN McCoy supported by substantial evidence.

### B.    Off-Task Limitation

Claimant also argued that the RFC was impermissibly vague because it did not address whether Claimant would be on or off task when alternating from sitting and standing positions. (DN 17, at PageID # 676-77.)  Claimant argued that this vague RFC caused an error in the ALJ's subsequent step five findings.  (*Id.*)  The Court finds Claimant's argument to be without merit.

At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c) 416.960(c) (2025); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations.  *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  The testimony of a vocational examiner ("VE") can constitute

substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146,  150 (6th Cir. 1996).  "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")).

The ALJ's RFC stated that Claimant "would require the option to alternate to sitting for five minutes after standing and/or walking continuously for 75 minutes." (R. at 23.)  While as noted by Claimant, this does not address whether Claimant would be on task or not during this time period, the Court finds no error in this omission on the facts of this case.  First, as to the finding at the RFC level, Claimant cited no authority requiring the ALJ to be more specific than he was and no medical records supporting that she would need to be off-task during this alternation period.  In the absence of this argument or authority, the Court reiterates its finding above that the ALJ's RFC is supported by substantial evidence.  Second, as to the step five finding, the ALJ asked the VE a hypothetical based on the limitations he adopted in his RFC without specifying whether the Claimant would be on or off task.  (*Id.* at 47-48.)  In her response, the VE decreased the number or positions "by 75 [percent] to reflect the number of jobs in the economy where the employer might offer a stool or bench at the workstation for their

14

employees." (*Id.* at 48.)  Thus, the VE identified jobs that the Claimant would be able to perform based on the ALJ's hypothetical, which was in turn based on the RFC the Court has found supported by substantial evidence.  The VE also said that an employee spending more than ten percent of their time off-task would be work preclusive.  (*Id.* at 50.)  This latter testimony supports that even if Claimant were off-task for the five-minute sitting time, five minutes alternated with seventy-five minutes of walking in an eight-hour day would result in a total sitting period of thirty minutes out of eight hours, which mathematically equates to approximately six percent of time off-task.  This is well under the tolerance limit that would be work preclusive per the VE's testimony.  Thus, the VE's testimony constitutes substantial evidence to support the ALJ's step five determination, and Claimant has failed to demonstrate any error.

## III.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**.  A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record

March 13, 2026